Williams, G. J.
The question which the bill of exceptions presents for the decision of this court is one of some importance, and is, whether the sale of whisky, when made otherwise tnan by a druggist or pharmacist for use as a medicine, is within *84 the condemnation of the statute under which the prosecution was instituted. The provisions of that statute which affect this question, are those contained in sections 1, and 2, and a part of section 3,and are as follows: “Section 1. That no person shall, within this state, manufacture for sale, or offer for sale, or sell any drug or article of food which is adulterated within the meaning of this act.” “Section 2. The term ‘drug,’ as used in this act, shall include all medicines for internal or external use, antiseptics, disinfectants and cosmetics.” “Section 3. An article shall be deemed to be adulterated within the meaning of this act: {a). In case of drugs: (1). If, when sold under or by a name recognized in the United States Pharmacopoeia, it differs from the standard of strength, quality or purity laid down therein.”
The Pharmacopoeia mentioned, is adopted by the statute as an authoritative compilation, comprising the accepted and known articles of drugs and medicines, with a description of their characteristics and qualities, andan approved standard of their proper degree of purity and strength. Whisky, by that name, is therein recognized and described, and its appropriate standard established ; and that article, it is well known, possesses important medicinal virtues, both in its internal and external use. It is none the less a medicine because it is sometimes taken as a beverage, or, like many other articles of medicine, may sometimes be applied to other than medicinal uses.
The statute is general in its terms, embracing every person in its inhibition against sales forbidden by its provisions, without distinction on account of the occupation of the seller, or the *85 purposes of the sale, or on any account whatever.
It is contended, however, that a legislative intent to limit the application of the statute so far as it relates to drugs, to sales by pharmacists and druggists, is to be derived from the fact that on the same day the statute was passed, another statute was enacted providing for the examination and registry of persons engaging in business of that kind, and prohibiting the business being carried on except by, or under the supervision of, a registered pharmacist. (81 O. L., 61.) But the fact that these two statutes engaged the attention of the legislative body at the same time, affords strong ground for the inference that it was rather the intention of that body not to restrict the operation of the former act as suggested, for such restriction, if it had been intended, could easily have been made, and the necessity of employing appropriate language to express it, would readily occur to the legislative mind. That no such restriction is expressed, but the statute was left general in its terms, applicable alike to all persons, sufficiently indicates the intent that the statute should have general application according to its terms. A legislative intention to exclude the application of the statute to sales of whisky as an article of merchandise, is also sought to be derived from those statutory provisions which regulate the traffic in intoxicating liquors; which, it is claimed, constitute a distinct system of laws complete in itself, controlling the whole subject. The provisions referred to are those requiring the dealer to take out a government license, and pay a stipulated tax to the state ; and those providing for the inspection of liquors, and against their adulteration. They are embraced in sections *86 3249, and 3250, of the Revised Statutes of the United States, and in the Dow law, and sections 4330, 4332, 6950, and 7082 of the Revised Statutes of this state. But the right of traffic conferred on the dealer by the government license and payment of the state tax, is subject to such limitations and regulations as the state in the proper exercise of its legislative power, may from time to time impose. Neither the license, nor payment-of the tax gives him authority to make sales which are in violation of those regulations, nor relieves him from the penalties they impose for a failure of their observance. And druggists and pharmacists are amenable to those provisions which punish the adulteration of whisky, and its sale when adulterated, like every dealer in liquors as a commercial commodity merely. They cannot plead their avocation as an excuse for a transgression of those provisions, nor demand immunity from the penalties that are attached, on account of the character of the business in which they were engaged at the time of the violation. There is no repugnancy between these statutes and the one here under consideration. They may all stand together, and they operate alike upon all persons who come within their provisions. They all have in view the same general result, that of insuring-the most desirable and perfect standard-of purity and quality of articles which in their use might otherwise prove injurious to health. They are directed to the accomplishment of still another purpose scarcely less laudable, and that is the prevention of frauds resulting from the sale of an inferior article for a price which entitles the purchaser to one fully up to the proper standard. This statute is an additional regulation, designed *87 for the more complete attainment of these salutory ends; and, that it might not prove ineffectual, it was deemed necessary that it should reach all persons who vend articles included in its provisions ; and it does so in plain terms. It contains no exception in favor of any person, class or business, and we are not aware of any authority of the court to engraft one of that character; or any other, upon it.

Exceptions sustained.